[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15289
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-00889-TJC-PDB


FELICIA HOLTON,

                                                          Plaintiff-Appellant,

versus

FIRST COAST SERVICE OPTIONS, INC.,
Blue Cross Blue Shield of Florida,
BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 11, 2017)

Before TJOFLAT, WILLIAM PRYOR and JILL PRYOR, Circuit Judges.

PER CURIAM:

Felicia Holton, proceeding *pro se*, appeals the district court's grant of summary judgment to First Coast Service Options and Blue Cross Blue Shield of Florida (collectively, "First Coast") on her claims of failure to provide a reasonable accommodation under the Americans with Disabilities Act ("ADA"),[1] 42 U.S.C. § 12101 *et seq.*, and interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

On appeal, Holton challenges three of the district court's rulings.  First, she argues that the court erred when it determined that she could not make out a failure to accommodate claim under the ADA because she did not demonstrate that she was disabled.  Second, she contends that the district court erred when it determined she could not show interference with her FMLA rights because the working arrangement she sought was not protected by the FMLA.  Third, Holton insists that the district court erred in concluding that First Coast's legitimate, non-discriminatory reason for terminating her was not pretextual.  After careful review, we affirm.

## I.    BACKGROUND

Holton worked for First Coast processing Medicare claims.  In January 2013, Holton requested and was approved for FMLA leave for a period ending in

---

[1] The district court also denied Holton's claim that she received disparate treatment under the ADA, but Holton does not reference this claim in her brief, so she has abandoned it.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (holding issues not adequately briefed on appeal are abandoned).

2

late March 2013 due to back pain stemming from a motor vehicle accident that took place several years earlier. When she returned to work on March 27, Holton gave her supervisor a letter from her chiropractor stating that for the next two weeks she should be limited to working four hours per day.

Later that day, First Coast human resources employees informed Holton that she could not return to work on a reduced schedule without a letter from a physician. Holton's chiropractor's office did not have a physician on staff, so the chiropractor's letter did not qualify. If she returned to work, she would be expected to meet the full requirements of her job. Holton inquired about other available positions, and a First Coast human resources employee told Holton that she could apply to any position on the website and the employee would assist her.

On April 1, Holton informed her supervisor that she was going to try to get a letter from a physician. The next day, however, Holton contacted the U.S. Department of Labor Wage and Hour Division, who told her that a chiropractor's letter should allow her to return to work. Wage and Hour Division personnel contacted First Coast, and on April 9, a First Coast attorney informed Wage and Hour Division personnel that First Coast would contact Holton and tell her she could return to work. Holton spoke with a Wage and Hour Division employee who told her that First Coast would be contacting her about returning to work. First Coast employees attempted to contact Holton via a telephone call and a letter, but

3

Holton testified that she received no communication. The letter, which was returned as undeliverable, stated that Holton was in violation of First Coast policy by failing to report to work, needed to report to work by April 30, and would be considered to have resigned effective April 9 if she did not comply. Holton did not return to work and was terminated. Holton testified that she learned about the termination when she received a letter about continuing her healthcare benefits.

Holton filed the present case against First Coast and later amended her complaint. After engaging in discovery, First Coast moved to dismiss her suit for failure to state a claim, and the court granted the motion without prejudice. Holton then filed a second amended complaint, which alleged that Holton qualified as disabled under the ADA because she suffered back pain that substantially limited her ability to walk, bend, and sit. Holton also alleged that First Coast refused to allow her to return to work, interfering with and retaliating against her for exercising her FMLA rights. First Coast moved for summary judgment, and the district court granted its motion. Holton appeals that order.[2]

## II.    STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party.

___

[2] Holton also filed a motion for reconsideration, which the district court denied. Although she included the court's denial of this motion in her notice of appeal, she did not reference this issue in her brief, so she has abandoned it. *See Sapuppo*, 739 F.3d at 680–81.

4

*Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). The movant bears the burden of showing the absence of dispute as to material facts, and upon such a showing, the burden shifts to the non-moving party to establish that a genuine dispute exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "Mere conclusory allegations and assertions will not suffice." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). There must be sufficient evidence on which the jury could reasonably find for the plaintiff, and the existence of a *scintilla* of evidence in support of the plaintiff's position is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "[L]iberal construction," however, "is not the same thing as wholesale redrafting." *Gilmore v. Hodges*, 738 F.3d 266, 281 (11th Cir. 2013).

## III.   DISCUSSION

## A.   Holton Did Not Establish That She Was Disabled Under the ADA.

Holton first contends that the district court erred in granting summary judgment to First Coast on her failure to accommodate claim because she made out a prima facie case of disability discrimination under the ADA. We agree with the district court, however, that Holton failed to establish that she was disabled under

5

the ADA.  The only evidence she offered of her disability was a two-sentence letter from her chiropractor, which did not provide enough information to establish that she was disabled.  We therefore affirm the district court's ruling.[3]

The ADA prohibits discrimination by an employer "against a qualified individual on the basis of a disability" in any of the "terms, conditions, [or] privileges of employment."  42 U.S.C. § 12112(a).  Such discrimination includes an employer's failure to reasonably accommodate a qualified employee's disability.  *Id.* § 12112(b)(5)(A).  Absent direct evidence of discrimination, "[t]he familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims."  *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999).  Holton therefore "ha[d] the burden of proving a prima facie case of" her employer's failure to accommodate her disability "by a preponderance of the evidence."  *Id.*  To make out this prima facie case, Holton was required to show that: (1) she was disabled; (2) she was a qualifying individual; and (3) she was discriminated against by First Coast's failure to provide a reasonable accommodation.  *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).

---

[3] The district court ruled in the alternative that Holton could not establish that she was discriminated against because she was responsible for the breakdown in communication about accommodating her disability.  We need not consider this ruling or Holton's arguments challenging it in light of our determination that Holton did not establish that she was disabled.

Holton failed to show that she was disabled, so she did not make out a prima facie case of discrimination.  An individual is disabled under the ADA if she has a physical or mental impairment that substantially limits one or more of her major life activities,[4] she has a record of such an impairment, or she is regarded as having such an impairment.  42 U.S.C. § 12102(1).  Holton alleged in her second amended complaint that she qualified as disabled under the first definition because she had a back impairment that "when active substantially limit[ed] one or more of [her] major life activities, including but not limited to, walking, bending and sitting."[5] Second Am. Compl. 5 (Doc. 46).[6]  She repeated the allegation in response to First Coast's motion for summary judgment.  But conclusory allegations such as these are not enough to withstand summary judgment, and Holton provided insufficient evidence to establish her disability.  *See Earley*, 907 F.2d at 1081.  The only evidence of disability to which she pointed was the letter from her chiropractor

_____

[4] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2).

[5] Holton's complaint also alleged that "Defendants was [sic] aware that I had a record of such impairment."  Second Am. Coml. 5 (Doc. 46).  Construing this allegation liberally, as we must with *pro se* filings, Holton alleged that she was disabled under each of the ADA's other two definitions of disability.  But Holton only argued she was disabled under the ADA's first definition in her response to First Coast's motion for summary judgment.  We therefore need not consider these alternative bases for establishing that Holton was disabled.  *See Stavropoulos v. Firestone*, 361 F.3d 610, 616 n.6 (11th Cir. 2004) ("[Plaintiff] did not present this theory to the district court when summary judgment motions were pending. . . . Because [plaintiff] failed to properly present her [ ] theory to the district court, we decline to consider it on appeal."), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

[6] Citations to "Doc." refer to the numbered entries in the district court record of the case.

requesting a modified work schedule.[7]  The letter stated that the chiropractor was treating Holton "for cervical, thoracic and lumbar back pain" and that she should "be limited to 4 hour work days for an [sic] duration of 2 weeks."  Iselborn Letter (Doc. 53-1).  Absent further evidence, this letter could not establish Holton's disability because it did not explain how Holton's back pain substantially limited any of her major life activities.

To be clear, a communication from an employee's treating physician can demonstrate that employee's disability, but Holton's letter from her chiropractor did not do so.  *See Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268–69 (11th Cir. 2014).  In *Mazzeo*, for example, we concluded that a physician's affidavit about an employee's back pain provided sufficient evidence of that employee's disability to withstand summary judgment.  *See id.*  That affidavit "stat[ed] that degenerative disc disease and a herniated disc impacted [the employee]'s ability to walk, bend, sleep, and lift more than ten pounds, . . . that [the employee]'s pain would increase with prolonged sitting and standing. . . . and that the[se] limitations . . . were substantial and permanent."  *Id.* (internal quotation marks and alteration omitted).  The affidavit also explained that the doctor had treated the employee for an extended period of time.  *See id.* at 1268.  We

---

[7] Holton also referenced an email conversation among First Coast employees about how to properly implement the chiropractor's recommendation.  But this conversation, which was based entirely on the chiropractor's letter, provides no further evidence of Holton's disability than the letter itself.

concluded that this affidavit was sufficient because "it explained [the employee]'s medical condition, what specific pain the condition caused, and *the limitations on 'major life activities'* (as that term is broadly defined by the ADA) resulting from the condition and pain." *Id.* at 1269 (emphasis added).  By contrast, the letter from Holton's chiropractor included nothing to link her back impairment to the limitations on her major life activities that she alleged.  The district court therefore properly granted summary judgment on Holton's claims of disability discrimination.

**B.    Holton Did Not Demonstrate Interference with Her FMLA Rights.**

Holton next argues that First Coast interfered with her exercise of her FMLA rights by refusing to allow her to return to her previous position after her leave and that the district court's contrary determination was in error.  But Holton sought to return to her position on a modified basis, which is not a right protected by the FMLA, so First Coast did not interfere with her FMLA rights when it required a note from a physician about her requested accommodation.  We therefore affirm the district court's grant of summary judgment to First Coast on Holton's FMLA interference claim.

The FMLA provides a cause of action to an employee whose employer denies or otherwise interferes with the employee's exercise of her FMLA rights. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000).

9

To establish an FMLA interference claim, an employee must show by a preponderance of the evidence that she was entitled to a benefit that was denied by her employer. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010). As relevant here, the FMLA guarantees an employee returning from FMLA leave the right to return either to the same position that she held when the leave commenced or to an equivalent position. 29 C.F.R. § 825.214. Holton alleged in her complaint that First Coast interfered with Holton's exercise of this right when the company failed to reinstate Holton upon her return from leave.

But First Coast did not interfere with Holton's FMLA rights because she sought to return to her position with a modified schedule. Once again, an employee is entitled to return "to the same position . . . or to an equivalent position with equivalent . . . *terms and conditions of employment*." *Id.* (emphasis added). It is undisputed here that Holton sought to return to the same position but with reduced hours. First Coast refused to allow her to return on a reduced schedule, requiring either that she return to her position full time, provide a note from a physician requesting an accommodation,[8] or apply for another open position with reduced hours. Because First Coast offered her the opportunity to return to work

---

[8] Requiring a note from a physician before providing an accommodation violates neither the FMLA nor the ADA. If an employee's serious health condition may also be a disability within the meaning of the ADA, the FMLA does not prevent the employer from following the procedures for requesting medical information under the ADA. 29 C.F.R. § 825.312(h). Under ADA regulations, an employer may require that an employee undergo a medical examination that is job-related and consistent with business necessity. *Id.* § 1630.14(c).

10

on a full time basis, it did not interfere with Holton's FMLA rights. The district court thus properly granted summary judgment on Holton's FMLA interference claim.

## C.    Holton Did Not Show That She Was Retaliated Against for Exercising Her FMLA Rights.

Finally, Holton argues that the district court erred in granting summary judgment on her claim that First Coast retaliated against her for contacting the Department of Labor seeking help with her FMLA claims. But the evidence demonstrates that First Coast terminated Holton for failing to report to work, and Holton has not demonstrated that this reason was pretextual. We therefore affirm the district court's grant of summary judgment.

In the absence of direct evidence of the employer's intent to retaliate, we apply the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*[9] to claims of FMLA retaliation. *See Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). Under this framework, if a plaintiff establishes a prima facie case of retaliation and the employer proffers a legitimate, non-discriminatory reason for its employment decision against the plaintiff, then the plaintiff must show that the employer's proffered reason was a pretext for discrimination. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272–73 (11th Cir. 2002).

---

[9] 411 U.S. 792 (1973).

Assuming she made out a prima facie case of retaliation, Holton did not show that First Coast's nondiscriminatory reason for firing her was pretextual. Courts will not second-guess an employer's proffered reason, so long as it is one that might motivate a reasonable employer. *See Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1187 (11th Cir. 1984).  An employee shows pretext by proving that the true reason for her employer's adverse employment action was discrimination. *Brooks v. Cty. Com'n of Jefferson Cty.*, 446 F.3d 1160, 1162–63 (11th Cir. 2006).  The employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons that a reasonable factfinder could find them unworthy of credence. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). Holton failed to meet this high bar with regard to her termination.

The evidence demonstrated that Holton was terminated pursuant to First Coast policy after she failed to report to work or provide a note from a physician explaining her need for an accommodation.  Holton argued that the temporal proximity between her contact with the Department of Labor on April 2, 2013 and her termination effective April 9, 2013 established pretext.  Like the district court, we cannot agree in light of First Coast's explanation that it fired Holton for absenteeism.  "Provided that [an employer's] proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and

12

rebut it." *Alvarez v. Royal Atl. Dev., Inc.*, 610 F.3d 1253, 1265–66 (11th Cir. 2010).  Holton did not do so.  We therefore affirm the district court's grant of summary judgment on her FMLA retaliation claim.

## IV.    CONCLUSION

Upon review of the entire record on appeal, and after consideration of the parties' briefs, we affirm.

**AFFIRMED.**